UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS B. STALLEY, in his
capacity as Personal Representative
of the Estate of Gary Robertson
and JEREMIAH HALLBACK, individually,
and on behalf of all those similarly
situated,

           Plaintiffs,

v.                       Case No. 8:11-cv-1652-T-33TBM

ADS ALLIANCE DATA SYSTEMS, INC.,

           Defendant.
_____/

**ORDER**

Plaintiffs Douglas B. Stalley, in his capacity as Personal Representative of the Estate of Gary Robertson, and Jeremiah Hallback's Third Motion for Class Certification (Doc. # 210), filed on June 27, 2013, brings this cause before the Court. Defendant ADS Alliance Data Systems, Inc. responded in opposition to the Motion on July 29, 2013. (Doc. # 228). For the reasons below, the Court denies the Motion.

**I.   Background and Procedural History**

Gary Robertson initiated this putative class action in state court on June 22, 2011, against Defendant ADS

Alliance Data Systems, Inc. for alleged violations of the Florida Security of Communications Act (FSCA), Fla. Stat. § 934.01 *et seq.* (Doc. # 2). The FSCA prohibits a party to a conversation from recording the conversation – including wire, oral or electronic communications – without the consent of all parties to the conversation, with some specific exceptions. See Fla. Stat. §§ 934.01 *et seq.* Stalley and Hallback allege:

> ADS services all of the accounts issued by WFNNB, WFNB, and WFCB, [who issue private label and co-brand credit card accounts] which includes placing telephone calls to accountholders who meet certain of their criteria (including having a past due account and no pending bankruptcy on file). . . . At all times material, ADS had and continues to have a policy to record all calls placed by and to its call center representatives.

(Doc. # 103 at ¶¶ 19-21). ADS removed the case to this Court on July 25, 2011, pursuant to the federal Class Action Fairness Act. (Doc. # 1).

On October 24, 2011, Robertson moved to certify the putative class. (Doc. # 20). However, while that motion was pending, Robertson passed away (Doc. # 82), and Douglas Stalley, as Personal Representative of Robertson's estate, was substituted as Plaintiff in this action. (Doc. # 87). Stalley subsequently requested leave to file a Second Amended Complaint, stating, "The adding of Mr. Hallback is

2

proper in this case because the relief Mr. Hallback would seek arises out of the exact same conduct as alleged by Mr. Robertson in the prior complaints, i.e., being illicitly recorded by Defendant in contravention of his privacy rights pursuant to Chapter 934, Florida Statutes." (Doc. # 88 at 3). The Court granted the Motion (Doc. # 100), and the Second Amended Complaint, filed on July 30, 2012, added Jeremiah Hallback as a Plaintiff and included an amended class definition. (Doc. # 103).

Stalley and Hallback filed a Notice to Correct Record on December 26, 2012 (Doc. # 130), and an Amended Notice to Correct Record on December 28, 2012 (Doc. # 131). In the Amended Notice, Stalley and Hallback state that "Hallback . . . previously represented to this Court [that he had] never held any credit accounts with either World Financial Network National Bank or World Financial Capital Bank [and had] never been a debtor of any account serviced by Defendant." (Doc. # 131 at ¶ 6). Stalley and Hallback claim that unbeknownst to Hallback, "Hallback did have a credit account with the Home Shopping Network . . ., which is a World Financial Capital Bank account." (Id. at ¶ 7). Representing that the factual discrepancy has little importance, Stalley and Hallback argue, "Essentially, the fact that Mr. Hallback

had a HSN account does not impact the claims in this case."
(<u>Id.</u> at ¶ 11).

On January 16, 2013, ADS moved the Court to strike the
Notices (Doc. # 145), and on May 13, 2013, the Court granted
ADS's Motion to Strike Unauthorized Papers. (Doc. # 196).
The Court found that "allowing [Stalley and Hallback] to,
effectively, amend the pleadings – as well as subsequently
filed motions – without leave of Court and without affording
Defendant an opportunity to object to such an amendment,
would be prejudicial to Defendant." (<u>Id.</u> at 6-7). Stalley
and Hallback moved to amend the Second Amended Complaint
(Doc. # 197), and on June 4, 2013, the Court granted the
motion and denied as moot all pending motions (Doc. # 206).
Stalley and Hallback filed the Third Amended Complaint the
same day. (Doc. # 208).

Stalley and Hallback filed the instant Third Motion
for Class Certification on June 27, 2013. (Doc. # 210).
Defendant filed its response in opposition on July 29,
2013. (Doc. # 228).

## II. <u>Legal Standard</u>

A district court has broad discretion in determining
whether to certify a class. <u>Washington v. Brown &
Williamson Tobacco Corp.</u>, 959 F.2d 1566, 1569 (11th Cir.
1992); <u>Griffin v. Carlin</u>, 755 F.2d 1516, 1531 (11th Cir.

1985). "However, with great power comes great responsibility; the awesome power of a district court must be exercised within the framework of [R]ule 23." <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1264 (11th Cir. 2009) (internal quotations omitted). In <u>Valley Drug Co. v. Geneva Pharms., Inc.</u>, 350 F.3d 1181 (11th Cir. 2003), the Eleventh Circuit explained "Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate." <u>Id.</u> at 1187. "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." <u>Vega</u>, 564 F.3d at 1265 (internal quotations omitted).

Under Rule 23(a), a class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. Fed. R. Civ. P. 23(a). These requirements for

class certification are generally referred to as the requirements of numerosity, commonality, typicality, and adequacy. Vega, 564 F.3d at 1265.

"If the above prerequisites have been met, the district court then directs its inquiry into the propriety of the class under one of the subsections of 23(b)." State of Ala. v. Blue Bird Body Co., Inc., 573 F.2d 309, 315 (5th Cir. 1978). Here, Stalley and Hallback present subsections (b)(2) and (b)(3) as applicable. (Doc. # 126 at 11-12). Certification is appropriate under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires additional "findings: (1) that common questions of law or fact predominate over questions affecting only individual class members ('predominance'); and (2) that a class action is superior to other available methods for adjudicating the controversy ('superiority')." Vega, 564 F.3d at 1265 (citing Fed. R. Civ. P. 23(b)(3)).

The burden of proof to establish the propriety of class certification rests with the advocate of the class,

and failure to establish any one of the four Rule 23(a) factors and at least one of the alternative requirements of Rule 23(b) precludes class certification. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615–18 (1997). "A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." Vega, 564 F.3d at 1266. "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug, 350 F.3d at 1188 n.15; Babineau v. Fed. Exp. Corp., 576 F.3d 1183, 1190 (11th Cir. 2009) (same).

## III. **Analysis**

Stalley and Hallback offer the following class definition for certification:

> Any and all persons who, on or after June 22, 2009 through the date of the final judgment in this action (the "Class Period")
>
> (1) received an outbound telephone call from ADS, at a telephone number associated with an address in Florida, as identified by the records maintained by ADS, spoke to an ADS representative, and were an accountholder with WFNNB, WFNB, or WFCB during the Class Period; or
>
> (2) received an outbound telephone call from ADS, at a telephone number associated with an address

in Florida, as identified by the records
maintained by ADS, spoke to an ADS
representative, and were domiciled or resided
with an accountholder of WFNNB, WFNB, or WFCB
during the Class Period.

(Doc. # 210 at 4-5). Because the FSCA prohibits a party to
a conversation from recording the conversation *without the
consent* of all parties to the conversation, Fla. Stat. §§
934.01 *et seq.*, Stalley and Hallback further state that,
"To the extent ADS has records that affirmatively
demonstrate someone meeting this definition gave prior
consent to being recorded, such individuals would also
necessarily be excluded from the class." (<u>Id.</u>).

### A.    <u>Ascertainability</u>

"Before a district court may grant a motion for class
certification, a plaintiff seeking to represent a proposed
class must establish that the proposed class is adequately
defined and clearly ascertainable." <u>Little v. T-Mobile USA,
Inc.</u>, 691 F.3d 1302, 1304 (11th Cir. 2012); <u>see also
Walewski v. ZeniMax Media, Inc.</u>, No. 6:11-cv-1178-ORL-28,
2012 WL 834125, at *3 (M.D. Fla. Jan. 30, 2012) report and
recommendation adopted, No. 6:11-cv-1178-ORL-28, 2012 WL
847236 (M.D. Fla. Mar. 13, 2012) <u>aff'd</u>, 502 F. App'x 857
(11th Cir. 2012) ("As is clear, before the Court can
conduct the 'rigorous analysis' of whether these claims

8

meet the Rule 23 standards, it must first, by necessity, define the claims."); Grimes v. Rave Motion Pictures Birmingham, L.L.C., 264 F.R.D. 659, 663-664 (N.D. Ala. 2010) ("Although not explicit in Rule 23(a) or (b), courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class. . . . Thus, the named plaintiff must define the proposed class in a manner that adequately identifies its members. Who, exactly, are they, and how can they be located?"); John v. Nat'l Sec. Fire & Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.").

Courts do not delve into the merits of individual claims at the class certification stage beyond the extent necessary to determine whether the requirements of Rule 23 are satisfied. See Valley Drug, 350 F.3d at 1188 n.15; Babineau, 576 F.3d at 1190. "To do so would allow the prospective class representative[s] 'to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained.'" Grimes, 264 F.R.D. at 665

(quoting <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177–78 (1974)). For that reason, a class should not be certified if the court must engage in individualized determinations of disputed fact in order to ascertain a person's membership in the class. <u>See</u> <u>Grimes</u>, 264 F.R.D. at 665 ("[C]lass certification is not appropriate if the court is called on to engage in individualized determinations of disputed fact in order to ascertain a person's membership in the class."); <u>Fisher v. Ciba Specialty Chem. Corp.</u>, 238 F.R.D. 273, 301 (S.D. Ala. 2006) ("Courts have declined to certify a class where the proposed definition would require individualized fact-finding to identify class members."); <u>Perez v. Metabolife Int'l, Inc.</u>, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult."); <u>see</u> <u>also</u> 5 James Wm. Moore et al., Moore's Federal Practice § 23.21[3][c] (3d ed. 2008) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class.").

ADS makes two compelling arguments regarding the ascertainability of the proposed class: 1) in order to determine membership in the class, the Court would have to examine each individual's circumstances to determine if that individual had been recorded without his or her consent; and 2) it is not clear how the actual recipient of a call from ADS could be identified, and merely allowing the *intended* recipient of the call to be a member of the class would impermissibly include individuals without a legitimate claim under the FSCA.

### 1.  Individualized Inquiries to Determine Class Membership

ADS asserts that the class definitions proposed by Stalley and Hallback would require that the Court make individualized factual determinations in order to ascertain if an individual qualifies as a member of the class. (Doc. # 228 at 6-7).

As previously stated, the FSCA does not prohibit recording communications when consent is given. Fla. Stat. § 934.01 *et seq*. For that reason, Stalley and Hallback have included as a caveat to their proposed class definition that "To the extent ADS has records that affirmatively demonstrate someone meeting this definition gave prior

consent to being recorded, such individuals would also necessarily be excluded from the class." (Doc. # 210 at 5).

Because consent is determinative for a claim under the FSCA, ADS contends that membership in the proposed class could only be ascertained by conducting a "mini-trial on every claim to determine if the member 'gave prior consent to being recorded.'" (Doc. # 228 at 7). ADS argues that such a "mini-trial" would essentially require the Court to determine class membership "by [first] adjudicating the liability of each class member's individual claim." (Id.). ADS illustrates the need for "mini-trials" by pointing out that "[e]very relationship between WFNB or WFCB and an accountholder is governed by a written [credit card] agreement." (Doc. # 228 at 4). ADS says that the credit card agreement between WFNB and WFCB and their respective cardholders contains a privacy statement that includes ADS's telephone monitoring policy. (Id.). ADS claims that the credit card agreement "serves to both provide notice of and obtain express consent to call recording." (Id.). Accordingly, ADS maintains that to determine if a person is a member of the class, the fact finder would need to first determine if he or she was an accountholder.

ADS further asserts that the individualized determinations could become much more complex than distinguishing between an accountholder and a non-accountholder because there are many other ways that ADS may have given notice and obtained consent for its recording policy from a purported class member: "notice in fact, notice by way of inbound calls to ADS that took place prior to any outbound calls, notice by way of prior dealings with ADS, general common knowledge, consent transferred from master to servant or agent, and many other concepts." (Doc. # 134 at 2).

ADS provides the following example to clarify the kind of inquiry that might be required: "[A] person that placed an inbound call to ADS prior to getting an outbound call would be on notice of the recording policy by virtue of a message given at the outset of every inbound call. From that point forward, notice and consent would be constructive and a question of fact for a jury. . . ." (Id.). While the Court makes no finding regarding the merits of ADS's argument regarding what might constitute consent, the fact that the Court may be required to make such a finding demonstrates that the proposed class is not

13

clearly ascertainable without resorting to individualized factual inquiries.

Stalley and Hallback's response to ADS's argument is twofold. First, they counter that the credit card agreements – and any consent to be recorded that is contained therein – are between accountholders and the banks that ADS services, not between the accountholders and ADS itself. (Doc. # 210 at 18). Second, Stalley and Hallback contend that because "ADS records all calls to accountholders from the moment the line connects until the call is terminated" and "does not automatically notify the recipients of its outbound collection calls that the calls are recorded," there "is no opportunity to provide any prior consent." (Id. at 3).

However, even if the Court were to accept Stalley and Hallback's assertion that the credit card agreements do not apply to ADS and thus do not impact the question of consent, Hallback and Stalley do not adequately account for the other methods by which consent may have been given.

## 2. Ascertaining Recorded Calls

ADS also contends that Stalley and Hallback's proposed class definition presents insurmountable technical hurdles: "Plaintiffs have yet to offer a valid basis by which class

14

members can be identified. In fact, the only evidence on the issue of ascertaining the identities of potential class members comes from ADS and demonstrates that no manner exists by which the person who actually answered a call from ADS can be identified." (Doc. # 228 at 8).

Central to ADS's argument is the difficulty of determining who actually picked up the phone and answered a call from ADS. Although Hallback and Stalley state that "members of the class can be identified and notified based on ADS's own records," (Doc. # 210 at 23), ADS has provided the Court with collection notes generated from Mrs. Robertson's Dressbarn account – one of the accounts for which the Robertson household received collection calls – as an example of the scant information ADS's employees collect when anyone other than the accountholder answers one of ADS's collection calls. (Doc. # 228-1).

"[The collection notes] contain[] nine separate 'OAHT' entries . . . . The 'OAHT' is an indication that a person that represented that he/she was not the [accountholder] answered the telephone. . . . No other information is contained in the notes regarding the actual identity of that person." (Doc. # 228 at 9).

ADS also maintains that "call recordings are not retained indefinitely by ADS" and that even if recordings of the calls did exist, "the recording of the OAHT call itself would likely be of no use, since . . . those calls often involve nothing more than a request to speak to the customer, a response indicating the customer is not available, and then, termination of the call—without any indication of who answered the call." (Id.).

The declaration of Brandlyn Loibl, ADS Compliance Manager, also supports ADS's claims:

> In the event a call placed by an ADS employee is answered by a person who does not identify himself as the accountholder or the spouse of the accountholder, the ADS employee is trained that he or she is not permitted to have a substantive discussion with that person. Instead, the call could simply be terminated without further conversation or a simpl[e] message left for the accountholder to call back. Regardless of how this type of call terminates, ADS's system would not contain any information regarding the identity of the person who answered the phone.

(Loibl Decl. Doc. # 230 at ¶ 11).

Stalley and Hallback reference the affidavits and depositions of Anya Verkhovskaya and Adam Sharp (Doc. ## 192, 193, 210-4, 210-5) to support their contention that the class can be "identified and notified" by ADS's own records (Doc. # 210 at 23). However, Stalley and Hallback

16

have not clarified how the hurdles outlined above might be overcome.

Furthermore, Stalley and Hallback state that they "do not offer the testimony of Mr. Sharp or Ms. Verkhovskaya to show that the members of the proposed class can be distinguished from the members of the public." (Doc. # 232 at 12). Instead, they contend that the "proposed class here is sufficiently defined, and no expert testimony is necessary. Therefore, their testimony is not proffered to support any argument regarding ascertainability." (Id. at 12). As Stalley and Hallback indicate that they do not wish the Court to consider the testimony of Ms. Verkhovskaya and Mr. Sharp as it pertains to ascertainability, the Court has not considered that testimony in its analysis.[1]

The Court is not convinced by Stalley and Hallback's assertion that the proposed class here is sufficiently defined. The Court has not been presented with reasonable methods for ascertaining the identity of the individuals

---

[1] The Court has not considered the declarations of Ms. Verkhovskaya and Mr. Sharp (Doc. ## 210-4, 210-5), which were filed in support of the instant Third Motion for Class Certification (Doc. # 210). Accordingly, ADS's Motion to Strike or Exclude Expert Declarations of Anya Verkhovskaya and Adam Sharp (Doc. # 226) is denied, without prejudice, as moot. If ADS wishes to renew the motion regarding the use of the declarations relative to other pending motions, it may do so.

who answered ADS's collection calls. Certifying as a class individuals who were merely the *intended* recipients of telephone calls from ADS would inappropriately include individuals whose calls were never intercepted and recorded and who, therefore, have no valid claim under the FSCA. See Walewski v. Zenimax Media, Inc., 502 F. App'x 857, 861 (11th Cir. 2012) (affirming district court's denial of certification where the proposed class definition "impermissibly includes members who have no cause of action").

The Court finds that the proposed class is not clearly ascertainable and thus class certification is inappropriate. However, in the interest of thoroughness and to promote clarity of the record, the Court will also consider the requirements explicitly set forth in Rule 23(a).

**B.    Rule 23(a) Analysis**

Even if the Court sets aside the problem of adequately defining and clearly ascertaining the proposed class, Little, 691 F.3d at 1304, Stalley and Hallback must establish the propriety of class certification under Federal Rule of Civil Procedure 23(a). See Amchem Prods., 521 U.S. at 615–18. As stated above, under Rule 23(a), a

class may be certified only if the requirements of numerosity, commonality, typicality, and adequacy are met. Vega, 564 F.3d at 1265.

### 1. Numerosity

To satisfy numerosity, the prospective class must be "so numerous that joinder of the class is impracticable." Fed. R. Civ. P. 23(a)(1). "The Court is given discretion to make assumptions when determining the numerosity of a class." Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D. Fla. 2000) (citing Evans v. U.S. Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983)). While "mere allegations of numerosity are insufficient," Fed. R. Civ. P. 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013). "Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." Vega, 564 F.3d at 1267 (emphasis in original).

Although mere numbers are not dispositive, the Eleventh Circuit has indicated that less than twenty-one

class plaintiffs is inadequate, and more than forty class plaintiffs is generally enough to satisfy the rule. <u>Cox v. Am. Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1553 (11th Cir. 1986).

Stalley and Hallback state that "[w]hile the precise number of class members in this case is not known at this time, what is known, from ADS's own declarations, are the minimum number of calls it made during the relevant time period (41,501,098) and the minimum number of calls actually answered (582,543)." (Doc. # 210 at 9).

In his Order denying without prejudice Stalley and Hallback's Motion to Compel Responses to Fourth Request for Production of Documents, the Honorable Thomas B. McCoun III, United States Magistrate Judge states that the Motion to Compel was "prompted by Defendant's argument in connection with class certification issues, that is, that Plaintiffs can offer nothing more than gross numbers of calls answered by persons as evidence of the number of class members that exist in this case." (Doc. # 157 at 5). Judge McCoun found that "the inability to determine with precision the actual number of class members is no bar to certification of a class in circumstances such as these where applying reason and common sense assumptions to the

20

available gross numbers inevitably leads to the conclusion that there are thousands of potential class members." (<u>Id.</u> at 5-6).

Although the Court has expressed its concern that ascertaining specific class members will require individualized factual inquiry, it agrees with Judge McCoun that "the sheer volume of past due accounts and calls made and answered reasonably suggest that the class is likely in the thousands." (<u>Id.</u> at 6). Thus, the Court finds that Stalley and Hallback have satisfied the requirement of numerosity.

### 2. <u>Commonality</u>

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality pertains to the characteristics of the group or class as a whole, unlike typicality which refers to the individual characteristics of the class representative as compared to those of the class members. <u>Piazza v. Ebsco Indus. Inc.</u>, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing <u>Prado-Steiman v. Bush</u>, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Commonality "does not require complete identity of legal claims." <u>Johnson v. Am. Credit Co. of Ga.</u>, 581 F.2d

21

526, 532 (5th Cir. 1978). In fact, commonality can be satisfied even with some factual variations among class members. <u>Armstead v. Pingree</u>, 629 F. Supp. 273, 280 (M.D. Fla. 1986).

However, in <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541 (2001), the Supreme Court clarified the commonality requirement for class certification by specifically rejecting the use of generalized questions to establish commonality. Noting that "any competently crafted class complaint literally raises common questions," the Court stated:

> What matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate *common answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

<u>Id.</u> at 2551 (internal citation omitted) (emphasis added). The Court explained that the "common contention" underpinning a finding of Rule 23(a)(2) "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>

Stalley and Hallback argue that "the claims of Plaintiffs and the class contemplate common questions of law and fact, *i.e.*, whether ADS's policy and regular practice of recording its telephone conversations with Plaintiffs and the class without their prior consent violates the FSCA." (Doc. # 210 at 10). "Rule 23 does not require that all questions of law and fact raised by the dispute be common . . . The claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs." Cox, 784 F.2d at 1557. Upon review of the record, the Court finds that the common questions suggested by Stalley and Hallback are sufficient to satisfy the commonality requirement. "These [common questions] are not simply convenient or collateral common [questions]. Rather, these questions are central to the case and their centrality and commonality support the policy objectives behind class certification." Buford v. H & R Block, Inc., 168 F.R.D. 340, 350 (S.D. Ga. 1996) aff'd sub nom. Jones v. H & R Block Tax Servs., 117 F.3d 1433 (11th Cir. 1997). Therefore, Stalley and Hallback have met their burden of demonstrating the commonality requirement.

3.   **Typicality**

23

Class certification also requires that the claims of the class representatives be typical of those of the class. See Fed. R. Civ. P. 23(a)(3). In order to establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Id.

When the class representative's injury is different from that of the rest of the class, his claim is not typical and he cannot serve as the class representative. Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Moreover, when proof of the class representative's claim would not necessarily prove the claims of the proposed class members, the class representative does not satisfy the typicality requirement. Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990). "Typicality, however, does not require identical claims or defenses." Kornberg, 741 F.2d at 1337. "A factual variation will not render a class representative's claim atypical unless the

24

factual position of the representative markedly differs from that of other members of the class." Id.

Stalley and Hallback argue that ADS's calls to Mr. Robertson – now represented by Stalley – and to Hallback were recorded without consent and in violation of the FSCA. (Doc. 208 at ¶¶ 22-25, 52). They also claim that each potential class member suffered the same injury in the same way. (Id. at ¶¶ 37-38). Therefore, they state that the "facts and law concerning the claims of Plaintiffs and the proposed class are sufficiently similar in nature to satisfy Rule 23(a)(3)'s typicality requirement." (Doc. # 210 at 11). The Court agrees and finds that a "sufficient nexus" has been established to satisfy the typicality requirement.[2]

## 4.  **Adequacy**

The final requirement for class certification under Rule 23(a) is adequate representation. See Fed. R. Civ. P. 23(a)(4). This prerequisite requires that the class

---

[2] The Court is well aware of ADS's arguments regarding the presence of individual questions in this action and its assertion that Hallback's accountholder status raises questions regarding his consent. (Doc. ## 228 at 12-14, 134 at 17-18). However, many of those concerns have been addressed in the discussion of ascertainability above, and others are better addressed under the predominance requirement of Fed. R. Civ. P. 23(b)(3).

representatives have common interests with the non-representative class members and requires that the representatives demonstrate that they will vigorously prosecute the interests of the class through qualified counsel. _Piazza_, 273 F.3d at 1346. Thus, the adequacy of representation analysis involves two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action." _Valley Drug Co._, 350 F.3d at 1189 (quoting _In re HealthSouth Corp. Sec. Litig._, 213 F.R.D. 447, 460–61 (N.D. Ala. 2003)). "The existence of minor conflicts alone will not defeat a party's claim to class certification." _Id._ Rather, "the conflict must be a fundamental one going to the specific issues in controversy." _Id._

ADS makes much of the fact that Hallback originally claimed he was not an accountholder with any of the banks ADS services, but later filed a Notice to Correct Record (Doc. # 130) and an Amended Notice to Correct Record (Doc. # 131) stating that he "did have a credit account with the Home Shopping Network . . ., which is a World Financial Capital Bank account" and is serviced by ADS. (_Id._ at ¶ 7). ADS claims that this incident bears on both Hallback's

credibility and on the adequacy of Stalley and Hallback's counsel. (Doc. # 134 at 17-19).

While the Court certainly expects diligence from officers of the court and honesty from all parties, the Court has no reason to believe that the discrepancy regarding Hallback's status as an accountholder was anything other than a mistake. When the mistake was discovered, Stalley and Hallback notified the Court. (Doc. ## 130; 131). Once Stalley and Hallback notified the Court, the Court took steps to ensure that ADS was not prejudiced by the incident. (Doc. # 196). The Court is not persuaded that this event renders either Hallback or counsel inadequate representatives.

Additionally, although ADS argues that Hallback – an accountholder subject to a credit card agreement – expressly consented to allow telephone conversations to be recorded and is thus subject to "at least one unique defense," the Court does not agree that the possibility of such a defense makes Hallback an inadequate class representative. (Doc. # 134 at 17-18). If the proposed class were certified, the question of consent via credit card agreement could be connected to the resolution of many class members' claims. While the person-by-person nature of the inquiry bears on the predominance of common questions over questions

affecting only individual members, it does not impact the question of adequacy to the same degree.

ADS also contends that Stalley's "status as Personal Representative of Mr. Robertson's estate makes him an inadequate class representative. This is so due to the fact that his duty to the creditors and beneficiaries of the estate conflicts with his duty to the absent class members." (Id. at 14). However, ADS acknowledges that there is no per se rule that Personal Representatives cannot serve as class representatives. (Id. at 14 n.13). Stalley and Hallback likewise argue that there is "no prohibition on the substitution of a personal representative as the named plaintiff in a class action" and that it is "often appropriate for the substitution of an estate administrator for a deceased class representative." (Doc. # 78 at ¶¶ 17-18).

While the Court does not dispute ADS's claim that Stalley's primary fiduciary duty is to the beneficiaries and creditors of Mr. Robertson's estate, the Court has no reason to believe that such a fiduciary duty is necessarily a "fundamental" conflict "going to the specific issues in controversy." Id.; Valley Drug Co., 350 F.3d at 1189. As such, the Court does not find that Stalley's position as

28

Personal Representative defeats the adequacy requirement of Rule 23.

As to the adequacy of counsel, Stalley and Hallback are represented by qualified attorneys – most of whom are shareholders or partners in their respective law firms – with many years of experience in class action litigation. (Doc. # 210-3). Counsel have submitted declarations, resumes, attorney profiles, and other documentation to the Court as evidence of their credentials. (Id.). The Court thus finds that they "will adequately prosecute the action." Valley Drug Co., 350 F.3d at 1189. The Court is not persuaded by ADS's repeated attempts to discredit opposing counsel. (Doc. # 134 at 18-20; 205; 228 at 20; 266 at 10-11). Furthermore, the parties are encouraged to cooperate whenever possible and to conduct themselves with civility at all times.

**C.   Rule 23(b) Analysis**

In order for class certification to be appropriate, the action must also fall within one of the three categories of class suits described in Rule 23(b). Fed. R. Civ. P. 23(b). In this case, Stalley and Hallback argue that this case is appropriate for certification under Rule 23(b)(2) and 23(b)(3). As such, the Court will also limit its analysis to Rule 23(b)(2) and Rule 23(b)(3).

## 1.   **Rule 23(b)(2)**

Rule 23(b)(2) certification is warranted when the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive or declaratory relief appropriate." Fed. R. Civ. P. 23(b)(2). A declaratory or injunctive relief class pursuant to Rule 23(b)(2) is appropriate only if "the predominant relief sought is injunctive or declaratory." Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001) (internal quotation marks and citation omitted). "Rule 23(b)(2) certification is not warranted where, notwithstanding a request for injunctive or declaratory relief, the predominant relief requested is monetary." Hammett v. Am. Bankers Ins. Co., 203 F.R.D. 690, 696 (S.D. Fla. 2001) (citing Murray, 244 F.3d at 812); see also Holmes v. Continental Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983); Advisory Committee Note to 1966 Amendment to Fed. R. Civ. P. 23(b)(2) ("[Rule 23(b)(2)] does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.").

"[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." Murray, 244 F.3d at 812. The Eleventh

30

Circuit defines the "specific criteria to determine whether monetary damages are incidental to equitable relief," Hammett, 203 F.R.D. at 696, as when the damages "flow directly from liability to the class as a whole on the claim forming the basis of the injunctive or declaratory relief." Murray, 244 F.3d at 812 (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)). The Eleventh Circuit has further held:

> Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. . . . Liability for incidental damages should not . . . entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions."

(Id.).

"The injuries remedied through Rule 23(b)(2) actions are really group, as opposed to individual, remedies." Hammett, 203 F.R.D. at 696 (citing Holmes, 706 F.2d at 1155 n.8); see also DWFII Corp. v. State Farm Mut. Auto. Ins. Co., 469 F. App'x 762, 765 (11th Cir. 2012). "The members of a (b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some

significant common trait such as race or gender." <u>Hammett</u>, 203 F.R.D. at 696 (quoting <u>Holmes</u>, 706 F.2d at 1155 n.8).

In Count II of the Third Amended Complaint, Stalley and Hallback seek injunctive relief pursuant to Florida Statute § 934.10(1)(a). (Doc. # 208 at 13). However, Count I states, "This is an action for statutory damages under the FSCA." (<u>Id.</u> at 12). While § 934.10 provides a statutory scheme for the award of actual damages, it requires that damages be determined on a claimant-by-claimant basis by examining the dates and frequency of calls made to a specific claimant in violation of the FSCA: "Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher." Fla. Stat. § 934.10(1)(b).

After careful consideration of the parties' arguments, the Court is not persuaded that the relief Stalley and Hallback request is incidental to injunctive relief and that certification is appropriate under Rule 23(b)(2). While Stalley and Hallback claim that certification is appropriate under Rule 23(b)(2) because ADS's "pattern of practice to record all outbound calls" is "generally applicable to the proposed class as a whole," the Court cannot disregard the possibility that consent was given for

ADS to record some of those outbound calls. The putative class is "neither bound together by a legal relationship or a significant common trait and thus lack the class cohesiveness that distinguishes (b)(2) from (b)(3) actions." Hammett, 203 F.R.D. at 696 (citing Holmes, 706 F.2d at 1155–56). Thus, the Court finds that class certification is not appropriate under Rule 23(b)(2).

### 2.   Rule 23(b)(3)

Stalley and Hallback also seek class certification under Rule 23(b)(3). To certify a Rule 23(b)(3) class, plaintiffs must demonstrate "(1) that questions of law or fact common to class members predominate over any questions affecting only individual members ('predominance'); and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ('superiority')." Babineau v. Fed. Exp. Corp., 576 F.3d 1183, 1190 (11th Cir. 2009) (citing Fed. R. Civ. P. 23(b)(3); Vega, 564 F.3d at 1265).

### a. Predominance

For common issues to predominate, plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as whole, . . . predominate over those issues that

are subject to individualized proof." <u>Kerr v. City of West</u> <u>Palm Beach</u>, 875 F.2d 1546, 1558 (11th Cir. 1989) (internal quotations and citation omitted).

"If 'after adjudication of the class-wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, their claims are not suitable for class certification under Rule 23(b)(3).'" <u>Sacred Heart</u> <u>Health Sys., Inc. v. Humana Military Healthcare Servs.,</u> <u>Inc.</u>, 601 F.3d 1159, 1170 (11th Cir. 2010) (quoting <u>Klay v.</u> <u>Humana, Inc.</u>, 382 F.3d 1241, 1255 (11th Cir. 2004), <u>rev'd</u> <u>on other grounds</u>; <u>see</u> <u>Perez</u>, 218 F.R.D. at 273 (declining class certification because "any efficiency gained by deciding the common elements will be lost when separate trials are required for each class member in order to determine each member's entitlement to the requested relief")).

"The predominance inquiry requires an examination of 'the claims, defenses, relevant facts, and applicable substantive law,' . . . to assess the degree to which resolution of the class-wide issues will further each individual class member's claim against the defendant."

Babineau, 576 F.3d at 1191 (quoting Klay, 382 F.3d at 1254).

The Court finds that common issues of law and fact do not predominate over questions affecting individual class members. Instead, the adjudication of Stalley and Hallback's claims on a class-wide basis would be consumed by individual factual inquiries and individual application of the pertinent substantive law. See Babineau, 576 F.3d at 1191-95 (affirming district court's denial of class certification after deciding that individualized questions were not suitable for class-wide adjudication).

ADS argues that "[i]n order to determine each class member's respective claim, the court would need to examine each interaction between ADS and the called party. . . . In the instant case, it is the Plaintiffs' burden to demonstrate, inter alia, that each call was recorded and that the class member did not consent to the recording." (Doc. # 228 at 19).

In its discussion of the ascertainability of the class, the Court discussed at length how the issue of consent might require a case-by-case inquiry into the factual circumstances of each potential class member's relationship with ADS. In addition to calling into question

35

how the class might be ascertained, that kind of individualized inquiry also suggests that common questions do not predominate over individual ones. Even without accepting ADS's argument that accountholders consented to ADS's policy of recording calls via the credit card agreement, there are still many ways that recipients of ADS's collection calls may have consented to recording. As the Eleventh Circuit stated in a case brought under the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, it is "the task of the trier of fact to determine the scope of the consent and to decide whether and to what extent the interception exceeded that consent." Watkins v. L.M. Berry & Co., 704 F.2d 577, 582 (11th Cir. 1983).[3]

Furthermore, ADS claims that "while it is ADS's policy to attempt to record all calls," all of the calls placed during the proposed class period were not recorded. (Doc. # 228 at 14; Prince Decl. Doc. # 229 at ¶ 7-9). From

---

[3] "The Court notes that the FSCA was modeled after the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, as amended by the Electronic Communications Privacy Act of 1986." Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC, No. 8:12-cv-2079-T-17MAP, 2013 WL 5437117, at *3 (M.D. Fla. Sept. 27, 2013). Florida courts "follow federal courts as to the meaning of provisions after which Chapter 934 was modeled." Id. (citing O'Brien v. O'Brien, 899 So. 2d 1133, 1135-36 (Fla. 5th DCA 2005); Minotty v. Baudo, 42 So. 3d 824, 832 (Fla. 4th DCA 2010)).

"unforeseen and unknown technical issues" to "routine scheduled maintenance," ADS contends that for various reasons, some of the calls made by ADS were not actually intercepted. (Prince Decl. Doc. # 229 at ¶ 8).

In his declaration in support of ADS's opposition to the Third Motion for Class Certification, Todd Prince, ADS's Senior Director, Systems, states that ADS experiences "a major interruption in call recording (i.e. several thousand calls are not recorded) about once every four months. During these interruptions, none of the calls impacted by the interruption are recorded." (Id. at ¶ 13). Further, according to Mr. Prince, ADS undertook a "major conversion project with respect to one of its call recording systems" in 2012, and that project "resulted in more than 1,000,000 calls not being recorded. This conversion project impacted calls made by ADS to accountholders in Florida, and resulted in such calls not being recorded." (Id. at ¶ 14).

Pursuant to the FSCA, no civil cause of action exists for *attempted* interception of communications. See Minotty v. Baudo, 42 So. 3d 824, 830 (Fla. 4th DCA 2010) ("By its choice of statutory language, the Legislature did not create a civil cause of action for attempts to intercept .

37

. . communications. It provided for civil damages only for the actual interception, dissemination, or use of those communications."). Accordingly, it is necessary to determine whether ADS's collection calls were actually intercepted and recorded in order to state a claim under the FSCA. However, the question of whether a specific call was recorded is also a question that must be answered on an individual basis.

Elements that are necessary to state a successful claim under the FSCA require that extensive individualized inquiries be made. As such, the Court finds that questions of law or fact common to class members do not predominate over the questions affecting only individual members.

### b. **Superiority**

The Court also finds that a class action is not "superior to other available methods for fairly and efficiently adjudicating this action." See Fed. R. Civ. P. 23(b)(3). The focus of a superiority analysis "is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Sacred Heart, 601 F.3d at 1183-84.

"[T]he predominance analysis has a tremendous impact on the superiority analysis. . . ." Id. (internal

quotations omitted); see also Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 (11th Cir. 1997) ("The predominance and [superiority] criteria are of course intertwined."). "The more common issues [that] predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability." Sacred Heart, 601 F.3d at 1184. However, the converse is also true. Id. When questions affecting individual members predominate, "class treatment would be either singularly inefficient, as one court attempts to resolve diverse claims . . . or unjust, as the various factual and legal nuances of particular claims are lost in the press to clear the lone court's docket." Jackson, 130 F.3d at 1006.

The Court has found that questions of law or fact common to class members do not predominate over the questions affecting only individual members in this action, thus the Court finds that a class action would be inefficient and difficult to manage. A class action is not superior to other available methods for fairly and efficiently adjudicating this controversy.

## IV.   Conclusion

Stalley and Hallback have failed to demonstrate that this action falls within one of the three categories of class suits described in Rule 23(b), and they have failed to show that the proposed class is clearly ascertainable. Thus, the Court denies Stalley and Hallback's Third Motion for Class Certification. For the reasons stated above, the Court also denies, without prejudice, as moot ADS's Motion to Strike or Exclude Expert Declarations of Anya Verkhovskaya and Adam Sharp.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiffs Douglas B. Stalley, in his capacity as Personal Representative of the Estate of Gary Robertson, and Jeremiah Hallback's Third Motion for Class Certification (Doc. # 210) is **DENIED.**

(2)   Defendant ADS Alliance Data Systems, Inc.'s Motion to Strike or Exclude Expert Declarations of Anya Verkhovskaya and Adam Sharp (Doc. # 226) is **DENIED,** without prejudice, as moot.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of November, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record