UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS B. STALLEY, in his
capacity as Personal Representative
of the Estate of Gary Robertson
and JEREMIAH HALLBACK, individually,
and on behalf of all those similarly
situated,

        Plaintiffs,

v.                       Case No. 8:11-cv-1652-T-33TBM

ADS ALLIANCE DATA SYSTEMS, INC.,

        Defendant.
_____/

**ORDER**

Now before the Court is Defendant ADS Alliance Data Systems, Inc.'s Renewed Motion for Final Summary Judgment (Doc. # 243), filed on August 15, 2013, and Plaintiffs Douglas B. Stalley, in his capacity as personal representative of the Estate of Gary Robertson, and Jeremiah Hallback's Renewed and Amended Motion for Partial Summary Judgment (Doc. # 256), filed on August 30, 2013. Both Motions are ripe for this Court's review. Upon due consideration and for the reasons that follow, ADS's Motion is granted to the extent detailed herein, and Stalley and Hallback's Motion is denied.

**I.**    **Factual Background**

ADS is a wholly-owned subsidiary of Alliance Data Systems Corporation, which is a Delaware Corporation. (Andrea Dent Decl. Doc. # 29 at ¶ 6; Michael Galeano Decl. Doc. # 169 at ¶ 6). World Financial Network Bank (WFNB), successor to World Financial Network National Bank (WFNNB), and World Financial Capital Bank (WFCB) are wholly-owned subsidiaries of Comenity LLC, a wholly-owned subsidiary of Alliance Data Systems Corporation. (Andrea Dent Decl. Doc. # 29 at ¶ 7; Michael Galeano Decl. Doc. # 169 at ¶ 7). WFNB and WFCB "issue private label and co-brand credit card accounts as part of programs for nearly [ninety] retailer clients." (Andrea Dent Decl. Doc. # 29 at ¶ 7). ADS services all the accounts issued by WFNNB, WFNB and WFCB. (Id. at ¶ 9).

"Every relationship between WFNB or WFCB and an account holder is covered by a written agreement," also referred to as a credit card agreement. (Id. at ¶ 10; Brandlyn Loibl Decl. Doc. # 230 at ¶ 5). The credit card agreements contain a privacy statement that includes a telephone monitoring provision, which states:

> **Telephone Monitoring**. As part of our continuing effort to maintain a high quality of service to our customers, telephone communications with you may be monitored and recorded. You agree that monitoring and/or recording may be done and that no additional notice to you or additional approval from you is

> needed. Please inform all persons authorized to use
> this account, those acting on your behalf, or
> anyone making payment on this account, of this
> provision.

(Brandlyn Loibl Decl. Doc. # 230 at ¶ 7; Andrea Dent Decl. Doc. # 29 at ¶¶ 12-13; Doc. # 21-A).

It is the policy and practice of ADS to record all incoming and outgoing calls related to account holder accounts. (Todd Prince Decl. Doc. # 229 at ¶ 5; Andrea Dent Decl. Doc. # 29 at ¶ 15). ADS records the calls from the moment the line connects until the call is terminated. (Andrea Dent Decl. Doc. # 29 at ¶ 14).

Any person placing a call to ADS – inbound telephone call – hears an automated message which states: "For quality assurance purposes, this call may be monitored and/or recorded." (Todd Prince Decl. Doc. # 229 at ¶ 23; Alvin Christmon Dep. Doc. # 253 at 26). However, outbound calls – those placed by ADS to the account holder – do not receive an automated audible warning; instead, ADS employees orally inform the account holder of the recording. (Todd Prince Dep. Doc. # 251 at 42, 111).

The calls are recorded by a digital recording system, which ADS refers to as a "logger," that is integrated into the telephone system. (Id. at 31). ADS currently uses loggers

purchased by ADS from NICE Systems, Inc. to record telephone conversations placed and received on its telephone system. (Todd Prince Decl. Doc. # 229 at ¶ 17; Andrew Krueger Decl. Doc. # 163 at ¶¶ 9-10; Dan Zabloudil Dep. Doc. # 254 at 30). The NICE system allows ADS to conduct analytics on each call and gives ADS the ability to ensure it is in compliance with policies and "drive[] quality higher with associates." (Todd Prince Dep. Doc. # 251 at 63, 81).

ADS has multiple locations at which calls relative to account holder accounts are placed and received by its employees. (Id. at 19-20). However, neither the phone system nor the logger that allegedly intercepted the calls in this action are located in Florida; they are located in Ohio. (Todd Prince Decl. Doc. # 165-1 at ¶ 14).

It is undisputed that in April of 2010, ADS placed several telephone calls to Robertson's home phone number in Tampa, Florida regarding his wife's credit card accounts. (Marcella Robertson Dep. Doc. # 171 at 5). These phone calls were recorded by ADS. (Doc. # 35 at 4). Thereafter, beginning in October of 2011, ADS placed numerous telephone calls to Hallback's home phone number in Hillsborough County, Florida to discuss his credit card accounts. (Hallback Dep. Doc. # 158 at 19-20). According to Hallback, ADS intercepted and

recorded the telephone calls without Hallback's prior consent. (Hallback Decl. Doc. # 158-2 at ¶ 5).

## II.   <u>Procedural Background</u>

Robertson initiated this putative class action in state court on June 22, 2011, against ADS for alleged violations of the Florida Security of Communications Act, section 934.01 *et seq.* ("FSCA"). (Doc. # 2). The FSCA makes it a crime to intentionally intercept a person's electronic communications, including a telephone call, without prior consent of all parties to the communication, and permits a private cause of action providing for a minimum of $1,000 in liquidated damages for an interception in violation of the Act. <u>See</u> Fla. Stat. §§ 934.01 *et seq.* ADS removed the case to this Court on July 25, 2011, pursuant to the federal Class Action Fairness Act. (Doc. # 1).

On October 24, 2011, Robertson moved to certify the putative class. (Doc. # 20). However, while that motion was pending, Robertson passed away (Doc. # 82), and Stalley, as personal representative of Robertson's estate, was eventually substituted as Plaintiff in this action. (Doc. # 87). Stalley subsequently requested leave to file a second amended complaint, stating, "The adding of Mr. Hallback is proper in this case because the relief Mr. Hallback would seek arises

out of the exact same conduct as alleged by Mr. Robertson in the prior complaints, i.e., being illicitly recorded by [ADS] in contravention of his privacy rights pursuant to Chapter 934, Florida Statutes." (Doc. # 88 at 3). The Court subsequently granted Stalley leave to amend the amended complaint (Doc. # 100), and the second amended complaint, filed on July 30, 2012, added Hallback as a Plaintiff and included an amended class definition (Doc. # 103).

Stalley and Hallback filed a notice to correct record on December 26, 2012 (Doc. # 130), and an amended notice to correct record on December 28, 2012 (Doc. # 131). In the amended notice, Stalley and Hallback state that "Hallback . . . previously represented to this Court [that he had] never held any credit accounts with either World Financial Network National Bank or World Financial Capital Bank [and had] never been a debtor of any account serviced by [ADS]." (Doc. # 131 at ¶ 6). Stalley and Hallback claim that unbeknownst to Hallback, "Hallback did have a credit account with the Home Shopping Network . . ., which is a World Financial Capital Bank account." (Id. at ¶ 7). Representing that the factual discrepancy has little importance, Stalley and Hallback argue, "Essentially, the fact that Mr. Hallback had a HSN

account does not impact the claims in this case." (Id. at ¶ 11).

On January 16, 2013, ADS moved the Court to strike the notices (Doc. # 145), and on May 13, 2013, the Court granted ADS's motion to strike unauthorized papers. (Doc. # 196). The Court found that "allowing Plaintiffs to, effectively, amend the pleadings – as well as subsequently filed motions – without leave of Court and without affording [ADS] an opportunity to object to such an amendment, would be prejudicial to [ADS]." (Id. at 6-7). Stalley and Hallback moved to amend the second amended complaint (Doc. # 197), and on June 4, 2013, the Court granted the motion and denied as moot all pending motions. (Doc. # 206). Stalley and Hallback filed the third amended complaint the same day. (Doc. # 208).

Stalley and Hallback filed the third motion for class certification on June 27, 2013. (Doc. # 210). On November 25, 2013, the Court denied Stalley and Hallback's third motion for class certification because Stalley and Hallback failed to demonstrate that this action falls within one of the three categories of class suits described in Fed. R. Civ. P. 23(b),

and Stalley and Hallback failed to show that the proposed class is clearly ascertainable.[1] (Doc. # 304).

ADS filed its present Renewed Motion for Final Summary Judgment on August 15, 2013. (Doc. # 243). Subsequently, on September 20, 2013, Stalley and Hallback filed a response in opposition to ADS's Motion. (Doc. # 269). Stalley and Hallback filed their Renewed and Amended Motion for Partial Summary Judgment on August 30, 2013 (Doc. # 256), and ADS filed a response in opposition on September 20, 2013 (Doc. # 271). The Court has reviewed the Motions, the responses thereto, and the documents the parties incorporated within each and is otherwise fully advised in the premises.

III. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc.,

---

[1] By separate Order, the Court subsequently determined that it retained jurisdiction over this matter despite the denial of class certification. (Doc. # 335).

477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the

non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

**IV.  <u>Motions for Summary Judgment</u>**

In its Renewed Motion for Final Summary Judgment, ADS requests that this Court adjudge the following issues in its favor: (1) the complaint improperly seeks to apply the FSCA to non-Florida conduct; (2) even if Florida law applies to the acts in question, ADS's actions were lawful under the business extension exception to the FSCA; (3) to the extent that the communications between Stalley and Hallback and ADS constitute "oral communications," Stalley and Hallback have failed to establish that they exhibited an expectation that

the communications at issue were not subject to interception; and (4) Hallback's claims are barred by the "good faith" defense. (Doc. # 243 at 2).

In their Motion, Stalley and Hallback seek summary judgment as a matter of law on the following issues: (1) the business extension exception is not applicable to ADS's recording device; (2) prior consent to record any telephone conversation between ADS and an account holder, or non-account holder, is not possible because the conversation is recorded from the moment the line connects, and no prior consent can be construed as being granted to ADS based on the credit card agreements to which it is not a party; and (3) ADS cannot avail itself of an arbitration agreement between WFNB, WFNNB, and WFCB and their account holders regarding any dispute "arising out of or related" to a credit card agreement to which ADS is not a party. (Doc. # 256 at 5-6).

As this Court finds that the business extension exception applies to this action, the Court will limit its discussion to the first two issues raised in ADS's Motion. As such, the Court grants ADS's Motion to the extent detailed herein, and denies Stalley and Hallback's Motion.

## A. ADS's Renewed Motion for Final Summary Judgment

### 1. Applicability of Florida Law

It is undisputed that at all relevant times neither the phone system nor the loggers used by ADS were located in Florida. (Todd Prince Decl. Doc. # 165-1 at ¶ 14). As a result, ADS contends that any alleged unlawful interception took place outside of Florida, and thus, Florida law is inapplicable to this action, specifically the FSCA. (Doc. # 243 at 3-4). In support of its contention, ADS submits that the Florida "legislature specifically intended [the] FSCA's proscription against intercepting to be limited to only intrastate wire and oral communications and did not intend for [the] FSCA to extend to extra-territorial acts." (Id. at 6).

However, Stalley and Hallback submit that ADS's cited case law is "based almost entirely on cases concerning personal jurisdiction," which is not an issue in this matter. (Doc. # 269 at 19). Instead, Stalley and Hallback suggest that Florida law is applicable in this action because "interception" under the FSCA occurs where the communication is uttered, which in the present action is Florida. (Id. at 20).

To establish a claim under the FSCA, the persons bringing suit must be Florida residents or the improper "interception" must have occurred in Florida. Cohen Bros., LLC v. ME Corp.,

12

S.A., 872 So. 2d 321, 324 (Fla. 3d DCA 2004). According to the third amended complaint, Hallback was, at all times material, a citizen of Florida. (Doc. # 208 at ¶¶ 3-4). Further, as stated in the complaint "[a]t all material times herein, . . . Robertson was a resident of Hillsborough County, Florida." (Doc. # 2 at ¶ 3). As the personal representative is deemed to be a citizen of the state of which the decedent was a citizen at the time of death, Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1562, n.1 (11th Cir. 1994), this Court could assume that Stalley, as the personal representative of Robertson's estate is likewise a citizen of Florida. However, as the record does not specifically address the state Robertson was a citizen of at the time of his death, the Court will proceed to address whether the improper "interception" at issue occurred in Florida. As ADS has done throughout its Motion, the Court will assume for the purposes of the present analysis only that an interception did in fact occur.

The law is clear that an "interception" occurs "where the words or the communication is uttered, not where it is recorded or heard." Koch v. Kimball, 710 So. 2d 5, 7 (Fla. 2d DCA 1998)(receded from on different grounds by Kountze v. Kountze, 996 So. 2d 246, 249 (Fla. 2d DCA 2008)); see also State v. Mozo, 655 So. 2d 1115, 1117 (Fla. 1995)(finding that

13

the actual interception of a communication occurs not where such is ultimately heard or recorded but where the communication originates); Hentz v. State, 62 So. 3d 1184, 1191-92 (Fla. 4th DCA 2011)(holding interception occurred where communication originated in home of defendant).

In April of 2010, ADS placed several telephone calls to Robertson's home phone number in Tampa, Florida. (Marcella Robertson Dep. Doc. # 171 at 5). Thereafter, beginning in October of 2011, ADS placed numerous telephone calls to Hallback's home phone number in Hillsborough County, Florida. (Hallback Dep. Doc. # 158 at 19-20). Although it is undisputed that neither the phone system nor the logger used by ADS to record such calls were located in Florida, it is further undisputed that the telephone calls were placed to home phone numbers located in Florida, and as such, Florida is where the words or communications were uttered. Accordingly, the Court finds that the calls originated in Florida, although ultimately heard and recorded outside of Florida. Therefore, as the interceptions originated in Florida, the FSCA is applicable to the present action. Thus, ADS's motion for summary judgment on this issue is denied.

## 2. Business Extension Exception

14

In order for ADS to be liable to Stalley and Hallback under the FSCA, the Court must now determine whether ADS intercepted the calls in question.  While Stalley and Hallback contend an interception occurred (Doc. # 269 at 3), ADS submits that because of the applicability of the business extension exception, no interception occurred, and therefore, it is not liable to Stalley and Hallback (Doc. # 243 at 12).

The term "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." See § 934.02(3), Fla. Stat. Therefore, to intercept a communication, an "electronic, mechanical or other device" must be used. See id. "Electronic, mechanical, or other device" is defined as:

> (4) [A]ny device or apparatus which can be used to intercept a wire, electronic, or oral communication **other than:**
>
> (a)   Any telephone or telegraph instrument, equipment or facility or any component thereof:
>
>    1. Furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such

> subscriber or user for connection to the
> facilities of such service and used in the
> ordinary course of its business. . . .

See § 934.02(4)(a), Fla. Stat. (emphasis added).

> The exception to the definition of "electronic,
> mechanical, or other device" is commonly referred
> to as the business extension exception . . . . Under
> the plain meaning of the statute, if this exception
> is met, then no interception occurred and there can
> be no liability under section 934.10. The exception
> has two prongs. First, the communication must be
> intercepted by equipment furnished by a provider of
> wire or electronic communication service in the
> ordinary course of its business. Second, the call
> must be intercepted in the ordinary course of
> business.

Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins.
Co., 924 F.2d 215, 217 (11th Cir. 1991).

### a. Equipment Used to Intercept Communications

The Court's initial inquiry is to determine what ADS equipment, if any, actually intercepted the communications in question – the telephone or the logger (i.e. recording device). Stalley and Hallback contend that it is ADS's logger that is the intercepting device. (Doc. # 269 at 3-5)(citing State v. Tsavaris, 394 So. 2d 418, 420-24 (Fla. 1981)). Conversely, ADS submits that the telephone system is the intercepting device. (Doc. # 243 at 15)(citing Royal Health, 924 F.2d at 217).

According to Stalley and Hallback, "Florida law compels the conclusion . . . that it is the logger (i.e. the recording device) provided first by Verint, and now NICE, and **not the telephone** that does the intercepting." (Doc. # 256 at 10)(emphasis in original). Stalley and Hallback cite to Tsavaris, 394 So. 2d at 418, to support their contention. In Tsavaris, the defendant – who had been indicted for first degree murder – moved to suppress evidence against him. Id. at 420. One of the evidentiary items was a tape recording of a telephone call he made to the medical examiner regarding the victim's autopsy results. Id. The medical examiner answered the call on speaker phone in the presence of a sheriff detective who had informed the medical examiner that the defendant was involved in the victim's death. Id. The detective overheard the entire conversation over the speaker phone, and although not instructed by the detective to do so, the medical examiner turned on a recording device and asked the defendant to identify himself. Id. The defendant's response and the remainder of the conversation were recorded by the medical examiner. Id.

Upon providing a discussion on the history of Chapter 934, Florida Statutes, and discussing previous court opinions, the Tsavaris court held that the recording of the

17

telephone conversation between the defendant and medical examiner constituted an unlawful interception for the purposes of Chapter 934, Florida Statutes. Id. at 421. Stalley and Hallback submit that a reading of Tsavris demonstrates that "[t]he law in Florida is not in doubt: the recording device is the equipment that intercepts communications under the business extension exception." (Doc. # 269 at 5).

Furthermore, Stalley and Hallback contend that in addition to finding that the logger was the equipment that intercepted the calls, the Court should find that the logger is not telephone equipment. (Id. at 5). ADS's logger is not "[a]ny telephone or telegraph instrument, equipment, or facility, or component thereof." (Doc. # 256 at 11). Instead, "it is a piece of the NICE system, i.e., a computer running NICE's software whose function is to record and store for future potential retrieval all telephone conversations [ADS] makes to Floridians, among others." (Id. at 11-12).

Stalley and Hallback proffer that the ADS logger is similar to the logger which was found not to be telephone equipment in Sanders v. Robert Bosch Corp., 38 F. 3d 736, 741 (4th Cir. 1994). In Sanders, a voice logger that recorded telephone conversations twenty four hours a day, seven days a week, was found to be outside the scope of "telephone

equipment" under the federal wiretap statute. Id. at 737; 740-41. The Sanders court was influenced by the fact that the logger was not provided by the telephone company, no similar device was manufactured or sold by the telephone company, "and even if it [were], [the court] could not characterize the voice logger as a 'telephone or telegraph instrument'" because "the voice logger in no way furthers the plant's communication system." Id. at 740.

Stalley and Hallback attempt to demonstrate the similarity of the present case to Sanders by providing that ADS's logger "records all calls, was not provided by a telephone company, and in no way furthers [ADS's] communication system." (Doc. # 269 at 6); see Schmerling v. Injured Workers' Ins. Fund, 795 A.2d 715, 726 (2002)(finding that the monitoring and recording devices did not qualify as "telephone equipment" because defendant's communication system was not improved, enhanced, or furthered by the addition of the monitoring and recording devices). However, Stalley and Hallback do concede that "[a]s with much of the construction of the federal act, there is disagreement and splits of authority regarding the analysis of what kind of device fits within the statutory term 'telephone equipment.'" (Doc. # 269 at 6).

19

Conversely, ADS contends that the telephone system, not the logger, is the "intercepting device." (Doc. # 243 at 15). To support its contention, ADS cites to Royal Health, 924 F.2d at 215. In Royal Health, the plaintiff sued the defendant pursuant to the FSCA for the unauthorized recording of a telephone conversation. Id. at 216. The defendant called the plaintiff's office and recorded the conversation pursuant to the defendant's policy that "all outgoing calls from its case management department . . . be automatically recorded on a double-reeled tape recorder." Id. The defendant, through its employee, never disclosed to the plaintiff's employees that they were being recorded and the plaintiff's employees never consented to such recording. Id. The defendant contended that because the business extension exception applied, no interception occurred under the Act, and therefore, the defendant could not be liable. Id. Thus, the Court discussed at length the applicability of the business extension exception to the case.

The plaintiff conceded that the telephone used by the defendant was supplied by a provider of wire or electronic communication service in the ordinary course of business. Id. at 217. However, the plaintiff submitted that the interception was actually made by the tape recorder, not the

telephone. Id. The Court disagreed and found that the telephone extension intercepted the call, while the tape recorder recorded it. Id.(citing State v. Nova, 361 So. 2d 411, 413 (Fla. 1978)(finding that since a call need not be recorded to be intercepted, the phone extension must be the device that intercepts the call)); Epps v. St. Mary's Hosp., Inc., 802 F.2d 412 (11th Cir. 1986)(finding that the intercepting device was the telephone, not the recorder attached to the telephone); United States v. Harpel, 493 F.2d 346, 350 (10th Cir. 1974)(concluding that telephone receiver is intercepting device, not recorder).

As evidenced by the parties' arguments and cited case law, the interpretation of which device intercepts communication – telephone system or recording device – has received varying treatment throughout Florida and the circuit courts. See Deal v. Spears, 980 F.2d 1153, 1158 (8th Cir. 1992)("It seems far more plausible to us that the recording device, and not the extension phone, is the instrument used to intercept the call."); Epps, 802 F.2d at 412 (intercepting device was telephone not recorder attached to telephone); Sanders v. Robert Bosch Corp, 38 F.3d 736 (4th Cir. 1994)(finding that the "voice logger" and attached handset microphone intercepted communications); Williams v. Poulos,

11 F.3d 271 (1st Cir. 1993)(recording system held to intercept communication); Murdock v. United States, 63 F.3d 1391 (6th Cir. 1995)(recording equipment attached to extension phone held to intercept calls); Harpel, 493 F.2d at 350(finding that "[a] recording device placed next to, or connected with, a telephone receiver cannot itself be the 'acquiring' mechanism. It is the receiver which serves this function – the recorder is a mere accessory designed to preserve the contents of the communication."). As stated by Stalley and Hallback, "the division among the circuit courts renders the business extension exception more in flux than fixed" (Doc. # 42 at 6), and "the split in the circuit courts is significant in this case because Florida follows federal courts as to the meaning of provisions after which Chapter 934 was modeled." (Id. at 10).

Upon consideration of both parties' interpretations, the Court is persuaded by the Eleventh Circuit's ruling in Royal Health, 924 F.2d at 215. As in Royal Health, Stalley and Hallback contend that ADS violated the FSCA when it recorded calls pursuant to an ADS standard policy to record all incoming and outgoing calls from the moment of inception until termination and did not inform Stalley and Hallback that the calls were going to be recorded. Likewise, while Stalley and

Hallback submit that the alleged interception was made by the recording device, ADS contends that the telephone system intercepted the call while the tape recorder recorded it. However, upon review, the Court agrees with the reasoning and outcome of <u>Royal Health</u> - it is ADS's telephone system itself which intercepted the calls, not the recording device.

In making its determination, this Court finds the crucial inquiry is deciding the means in which the contents of the calls in question were acquired. Here, it is undisputed that the loggers "have no function unless they are attached to a telephone system." (Todd Prince Decl. Doc. # 165-1). In fact, "the logger [cannot] function by itself." (Todd Prince Dep. Doc. # 251 at 31). Also revealing is that the loggers cannot be used to listen to phone calls the way an extension telephone can be used. (<u>Id.</u> at 91); <u>see</u> <u>Armstrong v. S. Bell Tel. & Tel. Co.</u>, 366 So. 2d 88, 89 (Fla. 1st DCA 1979)("The record is clear sub judice that the device attached to appellants' telephone lines did not itself have the capability of intercepting nor recording the contents of any oral communication. The device only recorded, by electrical impulses, telephone numbers called from the telephone to which attached.").

Furthermore, the Court finds the case Stalley and Hallback mainly rely upon – <u>State v. Tsavaris</u> – provides little guidance in determining this Court's crucial inquiry. In <u>Tsavaris</u> the court was tasked with answering a certified question: "Does the recording of a conversation by one of the participants constitute the interception of a wire or oral communication within the meaning of Chapter 934, Florida Statutes (1979)?" 394 So. 2d at 420. Although the Court found in the affirmative because of the broad protection to private communications the FSCA seeks to provide, the Court was not faced with determining whether the **recording device or the telephone system** was the equipment that intercepted the communication. This Court finds this to be the crux of the arguments posed by the parties in this action.

Furthermore, the <u>Tsavaris</u> court focused its attention on whether the exceptions listed in section 934.03(2), Fla. Stat. applied to the factual situation – rather than section 934.02(4)(a), Fla. Stat, which contains the business extension exception. <u>Id.</u> at 421. Finally, although the dissent in <u>Tsavaris</u> raises the same argument posed by ADS – that the telephone system did the intercepting, not the recording device – the Court notes that the majority in <u>Tsavaris</u> did not discredit the dissent's argument. Instead,

24

the majority focused its attention on whether the recording constituted an interception in light of Florida's requirement that "all parties to a defined wire or oral communication . . . give prior consent." Id. at 422.

As the above-mentioned analysis demonstrates, this Court finds that ADS's telephone system is the equipment that intercepted the calls with Stalley and Hallback, not ADS's recording device.

b. **Equipment Furnished by Provider of Wire or Electronic Communication Services in Ordinary Course of Business**

Next, having found that the telephone system was the device that intercepted the calls, not the logger, the Court must determine whether the telephone system was furnished by a provider of wire or electronic communication services in the ordinary course of business.

The telephone equipment ADS uses is manufactured by Avaya, Inc. and purchased either directly from Avaya or from Verizon. (Todd Prince Decl. Doc. # 36 at ¶¶ 9-10). Verizon also provides ADS's telephone service. (Id.). Specifically, Verizon provides the outbound and inbound calling system, which allows ADS to conduct its calls. (Todd Prince Dep. Doc. # 251 at 22).

As evidenced by the respective 2010 10-K Annual Reports filed by Avaya and Verizon:

> Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, Avaya: Is a global leader in business communications systems. The Company provides world-class unified communications solutions, data networking and related services directly and through its channel partners to leading businesses and organizations around the world. Enterprises of all sizes depend on Avaya for state-of-the-art communications that help improve efficiency, collaboration, customer service and competitiveness.
>
> * * *
>
> Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, Verizon "is a holding company, which, acting through its subsidiaries is one of the world's leading providers of communications services."

See (Doc. # 34; Doc. # 35 at Ex. 1-2). Stalley and Hallback do not contest the business endeavors of each company, and in fact, stipulate that they "have no general objection to the Court taking judicial notice of [Verizon's and Avaya's 2010 10-K Annual Reports'] authenticity, nor of their indication of Verizon's or Avaya's self-styled declarations of their respective company's business endeavors." (Doc. # 42 at 17).

Now, the Court must decide whether Avaya and Verizon – providers of ADS's telephone equipment – fall under the scope of providers of wire or electronic communication services in

the ordinary course of business. To the extent the parties have provided the Court with conflicting depositions and declarations in an effort to demonstrate their position on whether Avaya and Verizon are providers of wire or electronic communication services, the Court is fully capable of separating the wheat from the chaff in these documents. The Court will not and has not substituted legal conclusions provided by these affiants for its own judicial analysis.

Instead, as the parties agree that the FSCA mirrors the Federal Wiretap Act, 18 U.S.C. §§ 2510-2520, the Court finds guidance in the federal wiretap definition of "electronic communication service": "any service which provides users thereof the ability to send or receive wire or electronic communications." United States v. Steiger, 318 F.3d 1039, 1049 (11th Cir. 2003); United States v. Biro, 143 F.3d 1421, 1425 (11th Cir. 1998). It is further undisputed by the parties that a telephone call is considered wire communication. (Doc. # 243 at 6; Doc. # 269 at 14); see § 934.02(1), Fla. Stat.

The parties agree that Verizon and Avaya provide the telephone equipment to ADS which allows ADS to make inbound and outbound telephone calls to its account holders. As such, this Court finds that Verizon and Avaya provide "service[s] which provides [ADS] the ability to send or receive wire . .

27

. communications." Accordingly, Verizon and Avaya fit the definition of providers of wire communication services.

Furthermore, as Avaya's 2010 10-K Annual Report describes Avaya as "a global leader in business communications systems" and Verizon's 2010 10-K Annual Report describes Verizon as "one of the world's leading providers of communications services" the Court finds that Avaya and Verizon provide wire communication services in the ordinary course of business.

### c. **Call Intercepted in Ordinary Course of Business**

The Court must next decide whether the calls in question were intercepted in the ordinary course of business. ADS submits that the calls were not personal in nature, but rather were for the benefit of ADS's business. (Doc. # 243 at 14). Specifically, the calls were attempts to contact Hallback and Robertson to discuss their respective accounts, and the recording of such calls was for quality assurance purposes. (Id.). Stalley and Hallback do not contend that the calls were personal in nature. However, Stalley and Hallback argue that "because [ADS's] policy is to record all calls from the moment the line connects until the call is terminated, [it] is outside the scope of what could reasonably be considered 'in the ordinary course of business.'" (Doc. # 256 at

15)(citing Deal v. Spears, 980 F.2d 1153, 1158 (8th Cir. 1992)).

The general rule is that if the intercepted call was a business call, then the monitoring of it was in the ordinary course of business. Watkins v. L.M. Berry & Co., 704 F.2d 577, 582 (11th Cir. 1983)(citing Briggs v. Am. Air Filter Co., Inc., 630 F.2d 414, 417 (5th Cir. 1980)). Conversely, if it was a personal call, the monitoring was probably, but not certainly, not in the ordinary course of business. Id.; see Nova, 361 So. 2d at 413(deciding that the call was intercepted in the ordinary course of business because the supervisor used the phone "for the benefit of her employer.").

A review of the record reveals that the calls in question concerned charges on Stalley and Hallback's respective accounts. (Marcella Robertson Dep. Doc. # 171 at 5; Hallback Dep. Doc. # 158 at 19-20). Furthermore, although ADS has a policy to record all calls from the moment the line connects until the call is terminated, Stalley and Hallback have not provided this Court with evidence demonstrating that the constant recording was for anything but ADS's business. Instead, the evidence demonstrates that the calls were for servicing accounts and the recording of these calls was for quality assurance purposes and allowed ADS to conduct

29

analytics on each call. (Todd Prince Dep. Doc. # 251 at 63, 81). Therefore, the Court finds that the calls were business in nature and not personal. As such, the Court finds that the calls were intercepted in the ordinary course of business. See Epps, 802 F.2d at 417 (finding the interception to be business in nature).

As this Court has found that both prongs of the business extension exception are satisfied, the Court finds that no interception occurred under the FSCA by ADS, and as a result, ADS is not liable to Stalley and Hallback. Thus, the Court finds it unnecessary to address the remaining issues in ADS's Renewed Motion for Final Summary Judgment.

## B. **Stalley and Hallback's Renewed and Amended Motion for Partial Summary Judgment**

As this Court has previously discussed at length the applicability of the business extension exception to this action, this Court denies Stalley and Hallback's Motion on this issue. Because the business extension exception applies to this action, no interception occurred under the FSCA, and therefore, ADS is not liable to Stalley and Hallback. Accordingly, Stalley and Hallback's Motion on the issue of prior consent is denied. Finally, to the extent Stalley and Hallback contend that ADS cannot avail itself to the

arbitration agreement contained in the credit card agreements, the Court finds this issue moot as ADS submits in its response "ADS has not and will not seek to enforce the arbitration provision with respect to [Stalley and Hallback]." (Doc. # 271 at 17).

## V.   Conclusion

As both prongs of the business extension exception are satisfied, no interception occurred under the FSCA by ADS, and as a result, ADS is not liable to Stalley and Hallback. Therefore, this Court enters judgment in favor of ADS and denies Stalley and Hallback's Motion. Furthermore, ADS's pending Motion in Limine is denied as moot.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant ADS Alliance Data Systems, Inc.'s Renewed Motion for Final Summary Judgment (Doc. # 243) is **GRANTED** to the extent detailed herein.

(2) Plaintiffs Douglas B. Stalley, in his capacity as personal representative of the Estate of Gary Robertson, and Jeremiah Hallback's Renewed and Amended Motion for Partial Summary Judgment (Doc. # 256) is **DENIED.**

(3)   Defendant ADS Alliance Data Systems Inc.'s Motion in Limine (Doc. # 289) is **DENIED AS MOOT.**

(4)   The Clerk is directed to enter judgment in favor of Defendant and **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 31st day of January, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record